UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY TYLER,

    Plaintiff,

  v.

THE NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP. d/b/a METRA, ROBERTO SALDIVAR, and PAWEL SIKORA,

    Defendants.

No. 18 CV 1786

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Timothy Tyler worked as an electrician for The Northeast Illinois Regional Commuter Railroad Corporation, more commonly known as Metra. He brings Title VII and § 1983 claims against Metra and two of its employees, alleging that they discriminated against and harassed him because of his race and retaliated against him for engaging in protected activity. Defendants move to dismiss. For the reasons discussed below, their motion is granted in part, denied in part.

**I.    Legal Standards**

A complaint may be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). All reasonable inferences are drawn in favor of the non-movant. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018).

## II. Background

Metra hired Tyler in July 2007 as a journeyman electrician in the Mechanical Department. [2] ¶ 13.[1] Throughout his employment Tyler consistently received positive performance reviews. *Id.* ¶ 44. Despite telling Tyler at his orientation that employees could transfer into any position for which they were qualified, in 2008, Metra refused to let him transfer into an open position in the Electrical Engineering Unit even though he was qualified. *Id.* ¶¶ 14–15. In March 2017, Metra investigated allegations that Tyler had been "discourteous and quarrelsome" during a dispute with another employee, Mike Alonzo. *Id.* ¶¶ 17–18. Defendant Roberto Saldivar served as the hearing officer, and Tyler felt Saldivar ran the meeting unfairly because the Metra witnesses were dishonest and because Saldivar did not tell Tyler he could have his own witnesses available. *Id.* ¶¶ 17, 19. A month later, Tyler accused Alonzo of being dishonest. *Id.* ¶ 20. Tyler was again investigated, and this investigation resulted in a five-day suspension. *Id.* ¶ 21. Alonzo and another employee—both white—got into an argument around the same time that ended in a cursing match, and they were not disciplined. *Id.* ¶¶ 20–21.

In July 2017, Tyler called in sick because he had taken over-the-counter medicine and did not think it would be safe to work. *Id.* ¶ 22. Tyler had enough sick

---

[1] Bracketed numbers refer to entries on the district court docket.

2

time, but Saldivar told him he had to come in. *Id.* ¶ 23. Even though Tyler had already clarified that it was an over-the-counter medication, he received three calls in 30 minutes asking what he had taken and whether it was prescribed. *Id.* ¶ 24. In August 2017, Tyler asked about a new cell-phone policy which he thought violated Illinois law and Metra policy. *Id.* ¶ 25. When he added his concerns to a document before signing onto the new policy, Saldivar became angry and extended his arm toward Tyler. *Id.* ¶¶ 27–29. Tyler found this threatening and called the Metra police. *Id.* ¶ 29. A Metra employee said to Tyler, "you don't look like someone who gets intimated," which Tyler interpreted as having racial overtones. *Id.* ¶ 31. Metra subjected Tyler to a third investigation based on this incident and gave him a ten-day suspension. *Id.* ¶¶ 25, 30. Tyler registered complaints with Metra Human Resources, Metra Equal Employment Opportunity, and the International Brotherhood of Electrical Workers Union. *Id.* ¶ 32. Tyler also submitted an EEOC charge dated October 2017, asserting,

> I began employment with Respondent in or around July, 2007. My position is Electrician. During my employment, I was subjected to different terms and conditions of employment than non-Black employees, including but not limited to, accusations and investigations, discipline, and five day suspension without pay. I complained to Respondent to no avail. Subsequently, I have been subjected to another investigation resulting in a ten day suspension without pay. I believe that I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[2-1] at 3. In December, Tyler received a different position and Saldivar told him to remove all his belongings by the end of the day saying, "I don't care how or what you

have to do, just report to the new job location." [2] ¶ 35.[2] White employees were given more time to relocate. *Id*. After Tyler returned to a lead electrician position in January 2018, Metra failed to provide him with necessary tools, access to the system to order parts, or a company credit card to purchase those items, each of which Metra provided to other lead electricians. *Id*. ¶ 37.

**III. Analysis**

Tyler filed this lawsuit seeking back pay and compensatory and punitive damages[3] stemming from pressure to relinquish his lead electrician status, and therefore his seniority, from March 2015 through January 2018. *See id*. ¶ 9. Tyler brings race-discrimination, harassment, and retaliation claims against Metra, Saldivar, and Pawel Sikora (Saldivar's manager).

**A. Race Discrimination and Harassment**

Tyler brings race-discrimination and hostile-work-environment claims under both Title VII and § 1983. He does not specify which conduct forms the basis for which claim, but I read the complaint liberally, drawing all inferences in his favor.

*1. Title VII*

Tyler directs his Title VII discrimination and harassment claims against Metra, conceding in his brief that Sikora and Saldivar cannot be individually liable under Title VII. *See Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012). To

---

[2] Tyler did not specify the year, but given the context of the complaint it appears this was in 2017.

[3] Tyler acknowledges that he cannot recover punitive damages against Metra. *See* 42 U.S.C. § 1981a(b)(1); 42 U.S.C. § 1983.

4

state a discrimination claim, Tyler need only plausibly allege that his employer took an adverse employment action against him because of his race. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382–83 (7th Cir. 2016). One way to suggest discrimination is through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Khowaja v. Sessions*, 893 F.3d 1010, 1014–1015 (7th Cir. 2018).

To state a prima-facie case using *McDonnell Douglas*, Tyler must show: (1) he is a member of a protected class, (2) he met Metra's legitimate expectations, (3) he suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Khowaja*, 893 F.3d at 1014–15. Tyler alleges that he is black and that he was meeting Metra's legitimate expectations, as evidenced by his consistently positive performance reviews. He asserts that Metra twice suspended him, once for five days and another time for ten days and that Metra did not investigate or suspend white employees for similar conduct.[4] A suspension without pay is a materially adverse employment action. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). Though the complaint does not specify that the suspensions were without pay, in his EEOC charge Tyler asserted they were, and so it is reasonable to infer Tyler suffered a materially adverse action. *See* [2-1] at 3. Defendants argue that there are no facts indicating that any

---

[4] Tyler does not argue that the 2008 failure to transfer is a discrete materially adverse action, acknowledging that a claim based on that conduct would be time-barred. Instead he includes that information "to display a complete picture of the continuing pattern of discrimination, harassment and retaliation based on his race and engagement in protected activity." [34] at 5.

5

mistreatment is linked to Tyler's race, but Tyler alleges he was treated differently than non-black employees, and at the motion-to-dismiss stage that is enough. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634–35 (7th Cir. 2013). Tyler has adequately pled a Title VII discrimination claim.

To prevail on a hostile work environment or harassment claim "a plaintiff must demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on race . . . ; (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). Tyler alleges conduct which could amount to a hostile-work-environment claim. He asserts that Metra subjected him to unwarranted investigations, conducted those investigations unfairly, forced Tyler to come into work when he called in sick, and threatened him when he complained about the cell-phone policy. He also alleges that non-black employees were not subjected to similar treatment and that he had complained to Metra about it, creating a basis for employer liability (even assuming Saldivar was not a supervisor with the power to fire Tyler). *See id.* at 826 ("[A]n employer is strictly liable for harassment by supervisory personnel who have the power to hire, fire, or promote, and . . . is liable for harassment by nonsupervisory employees only when it has actual or constructive notice of the harassment.").

Whether harassment is sufficiently severe or pervasive to constitute a hostile work environment is generally a question of fact for the jury. *Id.* at 828. To be

6

actionable, it must be both objectively and subjectively hostile or abusive. *Passananti*, 689 F.3d at 667–68. Factors in assessing the severity of the conduct include its frequency, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Id.* at 667. Tyler points to repeated conduct that he perceived, on at least one occasion, to be physically threatening and which interfered with his ability to perform his duties. These actions, if true, could prove sufficiently severe to support a harassment claim.

Defendants argue that Tyler's harassment claim is outside the scope of his EEOC charge. A plaintiff can only bring claims that were originally included in the EEOC charge or are reasonably related to those that were. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–257 (7th Cir. 2011). A "plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint," but at a minimum the charge must "describe the same conduct and implicate the same individuals" as the allegations in the complaint. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500–501 (7th Cir. 1994). The test is whether there is a reasonable relationship between the two, and whether the claim in the complaint could reasonably have been "expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* When the charge alleges a different legal theory than the complaint, the two are not reasonably related unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge. *Id.* at 503.

Though Tyler did not mention harassment or a hostile environment in his EEOC charge, he asserted Metra subjected him to different terms and conditions of

7

employment than non-black employees, including but not limited to, accusations and investigations, discipline, and suspension. It is reasonable to conclude a harassment claim would have grown out of those facts, and so his claim could fall within the scope of the charge. Further factual and legal development may show that the harassing conduct, as limited by the scope of the charge, is insufficient to give rise to a claim, but at this stage dismissal on this basis is unwarranted.

Defendants also argue that the events that took place after Tyler filed his EEOC charge—including Saldivar's orders to immediately relocate to his new position and the refusal to provide Tyler with necessary tools or a credit card to buy them—fall outside the scope of the charge and are not actionable. Though this post-EEOC charge conduct is outside the scope, it—like the 2008 denial of Tyler's request to transfer—can be relevant evidence for Tyler's Title VII claims.

   2.   *Section 1983*

Tyler brings § 1983 claims against Sikora and Saldivar in their individual and official capacities and against Metra.[5] To state a discrimination claim under § 1983, Tyler must plead facts that plausibly suggest that he suffered disparate treatment based on his race in violation of his constitutional rights. *Williams v. Seniff*, 342 F.3d 774, 787–88 (7th Cir. 2003). To prevail on his claim against Metra, Tyler must show that a Metra policy or custom gave rise to the harm. *Glisson v. Ind. Dep't of Corr.*, 849

---

[5] Though Tyler asserted in his complaint that he named Metra solely for indemnification purposes, he argues that Metra is also liable on its own. Metra can be liable (as opposed to being an indemnifier) only pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

8

F.3d 372, 379 (7th Cir. 2017). To do so, he can show that the action alleged to be unconstitutional was implemented pursuant to an officially adopted policy statement or decision or an informal custom or that it was made by a final decisionmaker. *Id*. In his response, Tyler argues that "[d]iscovery will likely confirm what Plaintiff is alleging here, that Metra has an ingrained, longstanding custom of inflicting excessive discipline and different, less favorable terms and conditions of employment on its black employees." [34] at 7–8. But Tyler has not alleged any Metra policy or custom in his complaint from which I could infer that Metra caused the asserted constitutional violations, and so he has not stated a claim against *Metra* under *Monell*. And because the claims against Sikora and Saldivar in their official capacities are duplicative of those against Metra, they are also dismissed. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Stanek v. St. Charles Comm. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (affirming the district court's dismissal of individual-school-district employees in their official capacities because plaintiff had also sued the district).

To state a claim against Sikora or Saldivar as individuals, Tyler must allege they were personally involved in the alleged constitutional deprivations. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Saldivar, according to the complaint, served as the hearing officer during at least one of Tyler's investigations and ran it in an unfavorable way. Tyler also alleges that Saldivar made Tyler come in when he tried to take the day off and that he became incensed when Tyler raised concerns about the cell-phone policy, causing Tyler to call Metra police and resulting

9

in another suspension. This is enough to allege Saldivar was personally involved. But Tyler does not adequately allege Sikora's personal involvement. Tyler asserts that Sikora condoned Saldivar's conduct. But aside from this conclusory allegation, which need not be taken as true, nothing in Tyler's complaint indicates that Sikora personally discriminated against him, and so he has not stated a § 1983 discrimination claim against Sikora.

The elements needed to establish a hostile-work-environment claim under § 1983 are the same as those for Title VII. *Alamo v. Bliss*, 864 F.3d 541, 549 n. 16 (7th Cir. 2017). Tyler has alleged that Saldivar was personally responsible for creating a hostile work environment. But he again has not alleged that Sikora was personally involved. Tyler asserts that Sikora created a hostile retaliatory work environment in response to Tyler's complaints of mistreatment. But this allegation is both conclusory and fails to assert that the harassment was motivated by Tyler's race. In sum, Tyler failed to allege § 1983 discrimination and hostile work environment claims against Metra and Sikora, but because he stated claims against Saldivar, Metra remains a defendant for indemnification purposes.

**B. Retaliation**

Tyler also brings a Title VII retaliation claim against Metra and a § 1983 retaliation action against all three defendants.

*1. Title VII*

To state a prima-facie case of retaliation, a plaintiff must allege: (1) that he engaged in statutorily protected activity, (2) that he suffered an adverse action, and

(3) that there is a causal link between the two. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). A "'cognizable expression of opposition' to discriminatory practices" qualifies as protected activity. *Jaburek v. Foxx*, 813 F.3d 626, 633 (7th Cir. 2016) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 634 (7th Cir. 2011)). Tyler does not detail the content of the complaints he made to Metra HR, the EEO, or his union. But in his EEOC charge Tyler asserted that he had been treated differently than non-black employees, had complained about that mistreatment to Metra, and had suffered retaliation in response. [2-1] at 3. Reading the allegations in his complaint along with his EEOC charge, it is reasonable to infer that he complained about race discrimination and therefore engaged in Title VII-protected activity. In the retaliation context, "a materially adverse action is one which might well have dissuaded a reasonable worker from engaging in protected activity such as making or supporting a charge of discrimination." *Robinson*, 894 F.3d at 830. A suspension without pay could dissuade a reasonable worker from engaging in protected activity and so qualifies as materially adverse actions under the retaliation standard. Asserting that he engaged in protected activity and subsequently suffered a materially adverse action is enough to put defendants on notice about the nature of Tyler's retaliation claims and survive the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008).

### 2. Section 1983

Tyler alleges a § 1983 retaliation claim but does not identify the source of the underlying constitutional violation. "[T]he right to be free from retaliation may be

vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004). In the First Amendment context a public employee must allege that his employer retaliated against him in response to his constitutionally protected speech. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern. *Id*. Internal complaints about misconduct, made pursuant to official duties, are not protected. *Id*. at 967. A matter of "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83–84 (2004). When determining whether speech addresses a matter of public concern a court must consider the content, form, and context of the speech to determine whether the objective was to bring wrongdoing to light or to further some purely private interest. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983); *Kubiak v. City of Chicago*, 810 F.3d 476, 482–83 (7th Cir. 2016).

Tyler has not alleged that he engaged in constitutionally protected speech. "[I]f the objective of the speech—as determined by content, form, and context—is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern." *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013). Nothing in his complaint indicates that he engaged in speech motivated by anything other than alleviating his own grievance, and so he has not alleged a § 1983 retaliation claim.

## C. The Railway Labor Act

Defendants argue that the Railway Labor Act governs the parties' collective bargaining agreement and that arbitration is the exclusive forum for resolving "minor disputes," or those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *See* 45 U.S.C. § 153(i); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 254–56 (1994). Generally, claims brought pursuant to a collective bargaining agreement must be resolved in arbitration, whereas "claims based on rights with an independent basis may be litigated as usual." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 832 (7th Cir. 2014). An exception to this rule exists where "a nominally independent claim can be 'conclusively resolved' by interpreting a collective bargaining agreement because the claim's success depends entirely on the agreement's meaning." *Id.* (quoting *Brown v. Ill. Central. R.R. Co.*, 254 F.3d 654, 660–61 (7th Cir. 2001)). Similarly, a federal antidiscrimination claim, though nominally based on an independent right, must be resolved in arbitration if the plaintiff's claim turns on whether he is entitled to some right created by the collective bargaining agreement. *See Carlson*, 758 F.3d at 833 (discussing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 316–17 (7th Cir. 2002)). A claim is not barred, however, simply because the challenged action is arguably justified by the collective bargaining agreement. *Carlson*, 758 F.3d at 833.

Though Tyler asks for back pay and alleges he lost his seniority status because of defendants' discriminatory and retaliatory actions, he does not base his claims on either of those entitlements, nor any other created by his collective bargaining

13

agreement. Tyler alleges that defendants threatened him, subjected him to unfair investigations, and suspended him without pay. These actions, if motivated by race or retaliation, are unlawful in any employment situation—it is not the collective bargaining agreement that gives rise to Tyler's claims. Nor would interpreting that agreement conclusively resolve whether defendants' actions constitute discrimination, harassment, or retaliation. The Railway Labor Act does not require that Tyler vindicate his claims through arbitration.[6]

## IV. Conclusion

Defendants' motion to dismiss [28] is granted in part, denied in part.

ENTER:

Manish S. Shah
United States District Judge

Date: November 14, 2018

---

[6] In one line in his complaint, Tyler alleges a state-law claim for intentional infliction of emotional harm. [2] ¶ 10. He does not acknowledge defendants' argument that there are no factual allegations to support his claim and so has forfeited any argument in response. *See Alito v. Town of Lisbon*, 651 F.3d 715, 719 n. 1 (7th Cir. 2011). The conduct alleged in the complaint is not "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *See Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016). What is alleged is workplace discord, but nothing that crosses the line into intentional infliction of emotional distress.